UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **B.R.,** *et al.*,<br><br>           Plaintiffs,<br><br>      v.<br><br>**MARCO RUBIO,** *et al.*,<br><br>           Defendants. | No. 22-cv-1908 |

### MEMORANDUM OPINION

Plaintiffs are an American couple and their adopted Nepali daughter, B.R. They sued the Secretary of State and the Director of U.S. Citizenship and Immigration Services ("USCIS"), seeking to compel USCIS to adjudicate an I-600 petition, which, if granted, would allow B.R. to immigrate to the United States. Defendants now move to dismiss the case. Mot. to Dismiss ("Defs.' MTD"), ECF No. 15. For the reasons set forth below, the court will GRANT Defendants' Motion to Dismiss in an Order to follow.

### I.   BACKGROUND

#### A. Regulatory Background

To bring adopted orphans into the United States from countries that are not signatories to the Hague Convention on Intercountry Adoption, American citizens may file a petition with USCIS using Form I-600. *See generally* 8 C.F.R. § 204.3. If the petition is granted, the child may immigrate to and "permanently reside in the United States." *Skalka v. Kelly*, 246 F. Supp. 3d 147, 149 (D.D.C. 2017) ("*Skalka I*"). But before a petition can be granted, a U.S. official must first investigate and verify that the child was in fact orphaned. *See* 8 C.F.R. § 204.3(k)(1). This precaution seeks to prevent fraudulent adoptions and child buying. *See id.*

Nepal is not a member of the Hague Convention on Intercountry Adoption. In 2010, the U.S. Department of State and USCIS jointly suspended the processing of new I-600 petitions for Nepali children who are described as having been "abandoned." *See* USCIS, *U.S. Suspends Processing New Nepal Adoption Cases Based on Abandonment* (Aug. 6, 2010) ("2010 Suspension Policy"), https://perma.cc/F62R-JGHQ. The agencies expressed concern regarding the reliability of the adoption system in Nepal, noting that "birth certificates often include" "fabricated" data and Nepali officials routinely obstruct U.S. efforts to verify that a child was in fact abandoned. *Id.* The agencies stated that "all other countries that had been processing adoption cases from Nepal have stopped accepting new cases due to a lack of confidence that children presented as orphans are actually eligible for intercountry adoption." *Id.* The 2010 Suspension Policy remains in effect. *See* U.S. Dep't of State, *Intercountry Adoption: Nepal— Country Information*, https://perma.cc/287A-FWPF (last visited Oct. 11, 2025).

**B. Factual Background**

In 2015, the Skalkas filed an I-600 petition on behalf of B.R., a Nepali minor who was abandoned by her biological parents at birth. Am. Compl. ¶¶ 10, 64, 69, ECF No. 11. USCIS informed Plaintiffs, however, that the 2010 Suspension Policy barred action on their petition. *Id.* ¶¶ 78–79.

In 2016, Plaintiffs filed what would become their first lawsuit against the U.S. government. *See Skalka I*, 246 F. Supp. 3d at 151. They claimed, among other things, that the 2010 Suspension Policy violated the "nondiscretionary duty" of USCIS and the State Department "to process I-600" petitions. *See id.* Another court in this District disagreed and dismissed the case. *Id.* at 155. The court held, in relevant part, that the agencies are not required to process I-600 petitions when there is "genuine doubt about the reliability" of a foreign country's adoption

system. *Id.* at 153. Plaintiffs appealed that decision to the D.C. Circuit but voluntarily withdrew their appeal. Am. Compl. ¶¶ 90–91. They instead sought humanitarian parole for B.R. under 8 U.S.C. § 1182(d)(5)(A). B.R. applied for parole three times—in 2017, 2020, and 2022—and each application was denied. Am. Compl. ¶¶ 97, 99, 103, 115, 117, 121.

### C. Procedural History

In 2022, Plaintiffs filed the instant case. A year later, they amended their complaint to include six claims: Counts I and II challenge the 2010 Suspension Policy under the Administrative Procedure Act as arbitrary and capricious, procedurally improper, and contrary to 8 U.S.C. § 1152(a)(1)(A), which prohibits discrimination based on nationality in the issuance of visas. *See* Am. Compl. ¶¶ 126–52. Count III claims that the 2010 Suspension violates Plaintiffs' due process rights as parents under the Fifth Amendment. *Id.* ¶¶ 153–63. Counts IV and V allege that Defendants have unlawfully withheld and unreasonably delayed the processing of Plaintiffs' I-600 petition. *Id.* ¶¶ 164–94. Count VI challenges as arbitrary and capricious the denial of B.R.'s 2022 application for humanitarian parole. *Id.* ¶¶ 195–208.

Defendants argue that dismissal is warranted because, among other reasons, *res judicata* bars Plaintiffs' claims, and this court lacks jurisdiction to review the denial of a parole application. *See* Defs.' MTD at 12–13, 26–29.

## II.     LEGAL STANDARD

A defendant may move under Federal Rule of Civil Procedure 12(b)(1) to dismiss a claim for lack of subject-matter jurisdiction. In assessing a motion under Rule 12(b)(1), "the court must . . . accept all of the factual allegations in the complaint as true," *Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005) (cleaned up), but the court need not "accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

A defendant may move under Federal Rule of Civil Procedure 12(b)(6) to dismiss a claim as barred by *res judicata*. *See Boling v. U.S. Parole Comm'n*, 290 F. Supp. 3d 37, 45 (D.D.C. 2017). When ruling on such a motion, the court may take judicial notice of court records from other proceedings. *Id.*; *see also Laughlin v. Holder*, 923 F. Supp. 2d 204, 209 (D.D.C. 2013). Still, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in Plaintiffs' favor. *See Boling*, 290 F. Supp. 3d at 45.

### III.   DISCUSSION

Five of Plaintiffs' claims—Counts I through V—are barred under the doctrine of *res judicata*.[1] Plaintiff's sixth claim—their challenge to the denial of B.R.'s application for humanitarian parole—is barred under the Immigration and Nationality Act. Accordingly, the court will GRANT Defendant's Motion to Dismiss.

#### A.  *Res Judicata*

The *Skalka I* decision precludes Plaintiffs from relitigating Counts I through V of the Amended Complaint. Under the doctrine of *res judicata*, "a final judgment on the merits" in a prior suit bars the same parties or their privies "from relitigating issues that were or *could have*

---

[1] In general, a federal court must assure itself of subject-matter jurisdiction before reaching non-jurisdictional issues, even where difficult jurisdictional questions could be avoided by dismissing a case on a straightforward non-jurisdictional ground. *See Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94 (1998) (rejecting "the doctrine of hypothetical jurisdiction," *i.e.*, the practice of assuming jurisdiction for the purpose of dismissing a case on the merits). Although the D.C. Circuit has not addressed the question, the First Circuit has persuasively explained that a federal court may dismiss a claim on *res judicata* grounds without first addressing subject-matter jurisdiction. *Penobscot Nation v. Ga.-Pac. Corp.*, 254 F.3d 317 (1st Cir. 2001). "The *Steel Co.* limitation is fundamentally an objection to deciding 'the merits' where jurisdiction is lacking." *Id.* at 324. That "concern is not implicated" when a court, "without reaching the merits," determines it cannot "afford[] different relief" because *res judicata* precludes Plaintiffs' claims. *Id.* Accordingly, this court will address Defendants' *res judicata* defense without first resolving each of their thorny jurisdictional claims. *See* Def.'s MTD at 14–17.

*been raised*" in the earlier action. *Drake v. FAA*, 291 F.3d 59, 66 (D.C. Cir. 2002) (emphasis in original) (quoting *Allen v. McCurry*, 449 U.S. 90, 94) (1980)). Whether a claim could have been raised turns on whether it involves the same "nucleus of facts" as the claim or claims brought in the prior suit. *Id.* (quoting *Page v. United States*, 729 F.2d 818, 820 (D.C. Cir. 1984)). This common-sense principle—that parties get one bite at the apple—"conserves judicial resources," "protects [a party's] adversaries from the expense and vexation [of] multiple lawsuits," and promotes finality. *Apotex, Inc. v. FDA*, 393 F.3d 210, 217 (D.C. Cir. 2004).

Plaintiffs do not dispute that *Skalka I* involved the same parties and that it produced a valid final judgment on the merits. Nor do they dispute that Counts I through III—their APA and Fifth Amendment challenges to the 2010 Suspension Policy—could have been brought in *Skalka I*. After all, *Skalka I* also involved challenges to the 2010 Suspension Policy.

Instead, Plaintiffs primarily contend that Counts IV and V—their claims for unlawful withholding and unreasonable delay of agency action—are not barred by *res judicata* because "the material facts have changed as" what was then a "two-year delay has turned into an eight-year tragedy." Pls.' Opp'n to Def.'s MTD at 16, ECF No. 17.[2] It is true that "*res judicata* does not bar parties from bringing claims based on material facts that were not in existence when they brought the original suit." *Apotex*, 393 F.3d at 218. But the additional passage of time does not materially change *Skalka I*'s analysis. The threshold question when evaluating a claim for unlawful withholding or unreasonable delay of agency action is whether the "agency failed to

---

[2] To the extent that Plaintiffs argue the passage of time is material to Counts I through III, that argument would necessarily fail. The passage of time is not relevant to whether the 2010 Suspension Policy is, on its face, arbitrary and capricious, procedurally improper, unconstitutional, or contrary to 8 U.S.C. § 1152(a)(1)(A). Those claims involve facial legal challenges to a government decision that is over a decade old and do not turn on new facts. *See Apotex*, 393 F.3d at 218.

take [an] action that it is *required* to *take*." *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004) (emphasis in original). In *Skalka I*, the court concluded that Plaintiffs' claims failed at the threshold because USCIS and the State Department were not required to process I-600 petitions when there is "genuine doubt about the reliability" of a foreign country's adoption system. 246 F. Supp. 3d at 153. Thus, although the passage of time is relevant to the question of whether a delay is unreasonable, it is immaterial to the antecedent question of whether the agencies had any duty to act in the first place. Because *Skalka I* concluded the agencies were under no duty to act, the temporal length of their inaction is not a material new fact.

Finally, Plaintiffs contend that "there are compelling reasons to override the bar of *res judicata*" with respect to Count II's claim that the 2010 Suspension Policy is contrary to 8 U.S.C. § 1152(a)(1)(A)'s prohibition on nationality-based discrimination in the issuance of visas. Pl.'s Opp'n at 17. As Plaintiffs note, the D.C. Circuit has acknowledged that "on rare occasions," courts have reached precluded claims involving "paramount questions of constitutional law or exclusive jurisdiction." *Hardison v. Alexander*, 655 F.2d 1281, 1288–89 (D.C. Cir. 1981). But Plaintiffs' claim that the 2010 Suspension Policy violates a *statutory* prohibition on discrimination does not present a paramount question of *constitutional* law.[3] Nor have Plaintiffs established that Count II is a claim that the *Skalka I* court lacked jurisdiction over but one this court could address. *Contra Kalb v. Feuerstein*, 308 U.S. 433 (1940) (concluding that a federal court could review a bankruptcy claim that otherwise would have been barred by the preclusive effect of a state court judgment because federal courts had exclusive jurisdiction over that

---

[3] Although Count III—Plaintiffs' Fifth Amendment claim—involves a question of constitutional law, Plaintiffs make no argument that it is a paramount question of constitutional law that would fall within *Hardison*'s narrow exception to *res judicata*.

bankruptcy claim and the state court in the prior action was therefore unable to reach it). Accordingly, the exclusive jurisdiction exception to *res judicata* is inapplicable here.

### B. Humanitarian Parole

That leaves Count VI—Plaintiffs' challenge to the denial of B.R.'s 2022 humanitarian parole application. Count VI is not precluded under the doctrine of *res judicata* because it is based on facts which post-date the *Skalka I* decision. *See Drake*, 291 F.3d at 66.

Count VI nevertheless runs into a different problem: This court is barred from reaching it by 8 U.S.C. § 1252(a)(2)(B)(ii), which provides that "no court shall have jurisdiction to review" any decision under the Immigration and Nationality Act ("INA") that is committed to "the discretion of the Attorney General or the Secretary of Homeland Security." Humanitarian parole decisions are plainly committed to the discretion of the Secretary of Homeland Security. *See* 8 U.S.C. § 1182(d)(5)(A) ("The Secretary of Homeland Security may . . . *in his discretion* parole into the United States [noncitizens] for urgent humanitarian reasons . . . ." (emphasis added)).

Plaintiffs note that there is a narrow exception to the rule that "§ 1252(a)(2)(B)(ii) undoubtedly bars judicial review of individual parole decisions." *Aracely, R. v. Nielsen*, 319 F. Supp. 3d 110, 135 (D.D.C. 2018). That exception applies to challenges to "the legality of policies and processes" governing discretionary decisions under the INA. *Id.* But Plaintiffs do not challenge the policies or processes governing the humanitarian parole decisions. Instead, they contend that USCIS "did not adequately evaluate the . . . evidence Plaintiffs submitted" in support of B.R.'s application. Am. Compl. ¶ 201. That is a quintessential challenge to an "individual parole decision[]," not a challenge to a USCIS policy or process. *See Aracely*, 319 F. Supp. 3d at 135. The INA therefore bars Count VI of the Amended Complaint.

## IV. CONCLUSION

For the reasons explained above, the court will GRANT Defendants' Motion to Dismiss.

A corresponding Order will follow this opinion.

Date: October 11, 2025

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge